UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MARISOL RODRIGUEZ,

        Plaintiff,

  - against -

CITY OF NEW YORK, OFFICER ANGEL
SANTOS, OFFICER JOHN P. MCDONALD,
SERGEANT JOHN GILBERT, et al.,

        Defendants.

------------------------------------------------------------X

**MEMORANDUM AND ORDER**
08-CV-04173 (RRM)(RLM)

ROSLYNN R. MAUSKOPF, United States District Judge.

      On October 14, 2008, Marisol Rodriguez[1] ("plaintiff") filed this action pursuant to 42

U.S.C. § 1983, alleging that defendants City of New York, Officer Angel Santos, Detective John

McDonald, and Sergeant John Gilbert, violated her constitutional rights by falsely arresting and

maliciously prosecuting her for allegedly harassing defendant Santos.  (Compl. (Doc. 1);

Amended Compl. (Doc. 24).)  Plaintiff also asserts claims under New York state law.[2]

(Amended Compl. ¶¶ 63–68.)  Presently before the Court are two separate summary judgment

motions, one filed by defendants City of New York, Detective John McDonald, and Sergeant

John Gilbert (together, "City Defendants") (City Defs.' Mot. Summ. J. (Doc. 70)), and the other

filed by defendant Officer Santos (Def. Santos's Mot. Summ. J. (Doc. 71)).

      For the reasons set forth below, defendants' motions are GRANTED and the complaint is

dismissed in its entirety.

---

[1] The docket in this case lists plaintiff as "Marisol Rodriquez."  This appears to be a typographical error in the spelling of the plaintiff's last name.  The Court will spell plaintiff's name in accordance with her declaration.
[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1331, with supplementary jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

# I.
## BACKGROUND[3]

### A.    Facts

At some time prior to January of 2006, plaintiff and defendant Angel Santos, an officer

with the New York Police Department ("NYPD"), were involved in a personal romantic

relationship.  The parties dispute how and when the romantic relationship ended, who initiated

the breakup, and how the nature of the relationship changed over time.  (*See* Declaration of

Marisol Rodriguez ("Rodriguez Decl.") (Doc. 73-3) ¶¶ 2, 7, 24, 28, 36 (claiming that she and

defendant Santos "comit[ted] to each other," but he grew physically abusive, and she attempted

to distance herself from him); Deposition of Angel Santos ("Santos Dep.") (Doc. 73-9), Ex. 3 to

Declaration of Matthew Flamm ("Flamm Decl."), at 40–43, 48 (characterizing their relationship

as "just a sexual agreement").)  Defendant Santos ultimately made a complaint against plaintiff

for harassment and stalking, and a prosecution was initiated and ultimately dismissed.  (Defs.'

Rule 56.1 Stmt. ¶¶ 1, 19.)  The arrest and prosecution related to defendant Santos's complaint

form the basis of plaintiff's present action.

### 1.   Defendant Santos's Complaint

On December 31, 2005, defendant Santos made a criminal complaint against plaintiff at

NYPD's 72nd Precinct.  (Defs.' Rule 56.1 Stmt. ¶ 1.)  Defendant Santos was interviewed by

Detective McDonald.  Santos alleged that plaintiff had followed him on the street, repeatedly

appeared at his apartment uninvited, left letters and photographs at his apartment building,

knocked on his windows and doors, pushed objects through his window, and verbally threatened

---

[3] The following facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with the parties' motions for summary judgment and opposition thereto. The facts are undisputed except as noted. Moreover, unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003).

him.  (*Id.* at ¶ 2.)  Defendant Santos turned over what he represented to be examples of the letters and photographs left at his apartment. (Defs.' Rule 56.1 Stmt. ¶ 2.)  Defendant Santos also told Detective McDonald that he and plaintiff had been involved in a romantic relationship and that plaintiff previously had filed a complaint against Santos with the NYPD Internal Affairs Bureau ("IAB").  (Defs.' Rule 56.1 Stmt. ¶ 3.)  Detective McDonald warned defendant Santos at that time about filing a false report or making a complaint for retaliatory purposes.  (Deposition of John McDonald ("McDonald Dep.") (Doc. 73-10), Ex. 4 to Flamm Decl., at 124:8–9.)  Plaintiff concedes that Santos and McDonald had never met before.  (Oct. 28, 2009 Deposition of Marisol Rodriguez ("Rodriguez Dep. II"), Ex. 2 to Flamm Decl., at 192.)

On three occasions, defendant Santos provided the NYPD with a surveillance videotape from his apartment building.  (Defs.' Rule 56.1 Stmt. ¶ 4.)  One of the videotapes, which Detective McDonald saw, depicts plaintiff at Santos's apartment building on January 1, 2006.  (Defs.' Rule 56.1 Stmt. ¶ 4; Surveillance Video 2008036338, Ex. E to Hudson Decl., at 19:53:19–20:05:42.)

## 2.  Detective McDonald's Investigation

After interviewing defendant Santos, Detective McDonald called Lieutenant Ferraro, the officer then assigned to plaintiff's IAB complaints.  (McDonald Dep., at 17–18.)  Detective McDonald and Lieutenant Ferraro spoke two or three times regarding plaintiff's IAB complaints prior to plaintiff's arrest.  (March 16, 2010 Deposition of Nicholas Ferraro ("Ferraro Dep. I"), Ex. 12 to Flamm Decl., at 15–16.)  Detective McDonald testified that Lieutenant Ferraro told him "there was a history between the parties."  Particularly, according to McDonald, Lieutenant Ferraro explained that plaintiff had filed complaints against Santos, and that, at that time, one of her complaints was pending and another had been withdrawn.  Lieutenant Ferraro also relayed to

Detective McDonald "the general nature of the complaints" that plaintiff had filed against Santos, including that one involved an allegation of sexual assault. (*Id.*) Detective McDonald testified, however, that Lieutenant Ferraro did not give him "the specifics" as to plaintiff's allegations. (*Id.*) Lieutenant Ferraro also explained to Detective McDonald that he had "dealt personally" with plaintiff, and "told her to stay away from [Santos]." (McDonald Dep., at 17–18.)

Lieutenant Ferraro confirmed that he and Detective McDonald spoke two or three times about the complaints lodged by plaintiff against Detective Santos, and that the two never met. (Ferraro Dep. I, at 12–15.) Ferraro testified that while he did not have a recollection of the details of his conversation, ((March 29, 2010 Deposition of Nicholas Ferraro ("Ferraro Dep. II"), Ex. 13 to Flamm Decl., at 33), Ferraro "just gave [McDonald] an overall view of the case," and "didn't get into anything specific; just times, dates, dates when stuff happened." (Ferraro Dep. I, at 16.)

According to the record evidence, Plaintiff made at least three complaints to IAB against defendant Santos, spanning approximately one year prior to her arrest. (Rodriguez Decl. ¶ 33, 45; Ferraro Dep. I, at 8–9.) Two alleged incidents of violence and threatening behavior, and a third complaint alleged an incident of sexual assault. (Rodriguez Decl. ¶¶ 29, 33, 45; Ferraro Dep. I, at 8–9.) None of plaintiff's complaints to IAB were ever substantiated. (Internal Affairs Bureau Investigative Findings, Ex. 15 to Flamm Decl.)[4]

---

[4] However, Santos was found to have violated police procedure for failing to properly document his whereabouts on the day of the alleged sexual assault. (*Id.*)

Lieutenant Ferraro interviewed plaintiff approximately three times, including at her home and in the District Attorney's Office. (Rodriguez Dep. II, at 193.)[5] Plaintiff provided IAB with an "instant message" communication between plaintiff and defendant Santos, dated July 13, 2005, wherein plaintiff expressed to Santos that she did not want to speak with IAB anymore and he encouraged her to tell IAB that "we [meaning plaintiff and Santos] haven't spoken in a long time." (America Online Communication (Doc. 73-14), Ex. 8 to Flamm Decl.) Lieutenant Ferraro believed that he did not mention the instant message communication to Detective McDonald. (Ferraro Dep. II, at 61.)

As the IAB investigating officer on these complaints, Lieutenant Ferraro was in possession of Detective Santos' IAB file, which may have included matters unrelated to plaintiff's IAB complaints.[6] However, Lieutenant Ferraro specifically testified that he did not physically give the IAB file to Detective McDonald (Ferraro Dep. I, at 15–16), and there is no record evidence that the contents of the file, or information regarding matters unrelated to plaintiff's own IAB complaints, were ever communicated to Detective McDonald.[7]

### 3. Plaintiff's Interview and Arrest

On January 6, 2006, Detective McDonald and another unidentified officer visited plaintiff's home, and plaintiff voluntarily accompanied them back to the 72nd Precinct. (Defs.'

---

[5] Plaintiff claims that Lieutenant Ferraro and defendant Santos had a personal and professional relationship, allegedly stemming from their time working together in the Bronx. (Rodriguez Dep. II, at 192.) Both defendant Santos and Lieutenant Ferraro testified that they had never met one another prior to the investigation. (Santos Dep., at 84–85; Ferraro Dep. II, at 11.)

[6] The IAB file was produced in discovery pursuant to a protective order; however, the contents are not appended to any party's 56.1 statement filed in connection with these motions. Lieutenant Ferraro testified he was not assigned to investigate other matters. (Ferraro Dep. II, at 47.)

[7] Plaintiff points to a note in the IAB documentation indicating results of a database search in an effort to suggest that the notation indicates that additional relevant complaints exist. (IAB Investigating Officer's Report, Ex. 14 to Flamm Decl.) The notation alone does not support such an inference, and, most important, there is no record evidence to suggest that Detective McDonald ever ran such a search, or was aware of any search results.

Rule 56.1 Stmt. ¶ 6.)[8]  At the precinct, Detective McDonald and plaintiff discussed defendant

Santos's allegations against her, and Detective McDonald showed plaintiff a portion of the

videotape depicting her at defendant Santos's building.  (Defs.' Rule 56.1 Stmt. ¶ 7.)  Plaintiff

admitted to Detective McDonald that she was present at defendant Santos's apartment building

on at least two of the days during the period of time covering the acts alleged by defendant

Santos. (Defs.' Rule 56.1 Stmt. ¶ 8.)  Plaintiff claims she told Detective McDonald that she was

there because defendant Santos demanded that she return his clothing and gifts.  (Rodriguez

Decl. ¶ 60.)  Detective McDonald does not recall this statement, and he instead recalls that

plaintiff said she was there visiting a friend.  (McDonald Dep., at 65–66.)

Plaintiff also claims that after viewing the videotape and discussing the evidence,

Detective McDonald told plaintiff that "this is unsubstantiated evidence, but my boss told me to

make the arrest."  (Rodriguez Decl. ¶ 63.)  Detective McDonald testified that he does not recall

commenting on whether the videotape substantiated anything, and disputes telling plaintiff that

he was told to make the arrest.  (McDonald Dep., at 68–69.)  Plaintiff was then arrested for

aggravated harassment in the fourth degree and stalking in the second degree.  (Defs.' Rule 56.1

Stmt. ¶ 10.)

### 4.  Sergeant Gilbert's Role

On January 1, 2006, the day after his interview with defendant Santos, Detective

McDonald completed a Criminal Follow-Up Informational, or "DD-5", associated with

defendant Santos's complaint.  (Criminal Follow-Up Informational ("DD-5"), Ex. B to Hudson

Decl.)  The "details" section of the DD-5 describes Santos's allegations, the notes, letters, and

videotapes turned over by defendant Santos, and his statements about his romantic relationship

---

[8] Plaintiff originally believed Sergeant Gilbert to be the other officer, but she now concedes that Sergeant Gilbert did not accompany Detective McDonald to her home that day.  (Pl.'s Rule 56.1 Stmt. ¶ 16.)

with plaintiff and her complaints to IAB.  (*Id.*)  The DD-5 indicates that the surveillance video turned over to IAB was "of Rodriguez placing a letter and pictures of [Santos] and a female friend on his door."  (*Id.*)  It also states that "[a]ccording to Mr. [S]antos the relationship ended at his behest over a year ago," that "[s]ince that time, Rodriguez has refused repeated re-quests by Mr. [S]antos to leave him alone" and that IAB had "advised [her] to 'stay away' from Mr. Santos and not attempt to contact him."  (*Id.*)

Sergeant Gilbert's name appears on the January 1, 2006 DD-5 as the "Reviewing/Closing Officer." (Defs.' Rule 56.1 Stmt. ¶ 14.)  Detective McDonald was required to prepare such follow-up reports following assignment of the case. (McDonald Dep., at 107:14–108:9; Deposition of Matthew Gilbert (Doc. 73-11) ("Gilbert Dep."), Ex. 5 to Flamm Decl., at 23:9–12, 36:9–20.)  A supervisor was required to review the reports, but a meeting or discussion with the supervisor was not required.  (McDonald Dep., at 107:14–108:9; Gilbert Dep., at 23:9–12, 36:9–20.)  Detective McDonald and Sergeant Gilbert do not recall discussing plaintiff's arrest with one another.  (Defs.' Rule 56.1 Stmt. ¶ 17.)  Plaintiff concedes that Sergeant Gilbert has never met defendant Santos.  (Rodriguez Dep. II, at 192.)  To date, plaintiff has never met nor interacted with Sergeant Gilbert.  (Defs.' Rule 56.1 Stmt. ¶ 15.)

### 5.  Plaintiff's Prosecution

Plaintiff's prosecution was commenced with the filing of a misdemeanor criminal information.  (Jan. 7, 2006 Criminal Information, Ex. 11 to Flamm Decl.)  Neither Detective McDonald nor Sergeant Gilbert signed the charging instrument.  (Defs.' Rule 56.1 Stmt. ¶ 12.) Plaintiff was arraigned on January 7, 2006, the day following her arrest, and was released. (Roriguez Dep. II, at 83–84.)  Two amended criminal informations were signed by prosecutors, and Defendant Santos signed supporting depositions swearing to the facts attributed to him in

these amended informations.[9]  (Defs.' Rule 56.1 Stmt. ¶ 12; Feb. 2, 2006 Supporting Deposition

to Criminal Information, Ex. K to Hudson Decl.; Criminal Informations and May 1, 2007

Supporting Deposition, Ex. 11 to Flamm Decl.)  On October 4, 2007, almost 20 months after her

arrest, plaintiff's criminal case was dismissed on speedy trial grounds.  (Defs.' Rule 56.1 Stmt.

¶ 19.)[10]

Plaintiff "concedes that defendant Santos was not acting under color of law" at any

relevant time.  (Pl.'s Mem. Opp. Mot. Summ. J. (Doc. 73), at 1 n.1.)  The parties agree that

Detective McDonald and Sergeant Gilbert were on duty and acting within the scope of their

employment at all relevant times.  (Defs.' Rule 56.1 Stmt. ¶ 20.)

## B.    The Instant Action

On October 14, 2008, plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging

that defendants violated her constitutional rights by falsely arresting and maliciously prosecuting

her.[11]  (Compl.; Amended Compl.)  Plaintiff also asserted claims of malicious prosecution and

negligent hiring and supervision under New York state law.  (Amended Compl. ¶¶ 63–68.)  On

March 3, 2011, the City Defendants and defendant Santos filed separate summary judgment

motions.  (City Defs.' Mot. Summ. J. (Doc. 70); Def. Santos's Mot. Summ. J. (Doc. 71).)  In her

opposition to defendants' motions for summary judgment, plaintiff withdraws her *Monell* claim

for municipal liability under § 1983 against the City of New York, as well as her municipal

liability claim against the City of New York under New York state law for negligent hiring and

---

[9] Plaintiff stated in her 56.1 statement that Santos did not sign a supporting deposition until May 1, 2007.  This is contrary to evidence in the record that he signed a deposition on February 2, 2006.  (*See* Ex. K to Hudson Decl.)

[10] The Kings County Criminal Court issued a number of temporary protective orders against plaintiff from February 23, 2006 to October 4, 2007 directing her to stay away from defendant Santos. (Defs.'s Rule 56.1 Stmt. ¶ 18.) Neither party has explained what facts, if any, were required to support their issuance.  As such, the Court does not find them useful to its analysis.

[11] At the time these motions were filed, a civil action was pending in New York state court against Santos for assault and battery in connection with the alleged sexual assault plaintiff reported to IAB.  (Defs.'s Rule 56.1 Stmt ¶ 21; Ex. Q to Hudson Decl. at 6.)

supervision.  (Pl.'s Mem. Opp. Summ. J., at 1 n.1.)  This Court addresses the remaining claims below.

## II.
## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of material fact is genine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).  Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor."  *Anderson*, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case."  *Nebraska v. Wyoming*, 507 U.S. 584, 590

(1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## III.
## DISCUSSION

### A.    False Arrest Claims Against Detective McDonald and Sergeant Gilbert

A § 1983 claim requires the plaintiff to show conduct "committed by a person acting under color of state law" that "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

For a false arrest claim, the plaintiff must show: "(1) the defendant intended to confine [her]; (2) [she] was conscious of the confinement; (3) [she] did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *Brewton v. City of New York*, 550 F. Supp. 2d 355, 363 (E.D.N.Y. 2008) (citations omitted). Probable cause "is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted). "Even absent probable cause to arrest, a police officer will be entitled to qualified immunity if he can demonstrate that there was arguable probable cause for the arrest." *Brewton*, 550 F. Supp. 2d at 363 (citation omitted); *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010).

### 1.    Probable Cause

Probable cause exists where "the arresting officer [has] knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an

offense has been committed by the person to be arrested." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotations omitted). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it . . . ." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations and citations omitted). Probable cause is determined based on the totality of the circumstances. *Id.* And, "the probable cause inquiry is objective rather than subjective." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004)).

Plaintiff argues that a reasonable jury could find that defendant Santos's accusations were unworthy of belief and there was thus no reasonably trustworthy information supporting probable cause. This misconstrues the probable cause inquiry. In the absence of a genuine and material dispute as to the pertinent facts, probable cause to arrest may be determined by the court as a matter of law. *Weyant*, 101 F.3d at 852. As such, this Court therefore considers the undisputed facts available to Detective McDonald at the time he arrested plaintiff, taking them in the light most favorable to plaintiff.

### a. Detective McDonald

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119; *Martinez*, 202 F.3d at 634 ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.").

Here, Detective McDonald relied on a complaint by Angel Santos, an individual who asserted that he was the victim of plaintiff's alleged harassing and stalking. Defendant Santos's complaint provided details regarding specific alleged actions of the plaintiff, and Santos was forthcoming about his relationship with the plaintiff and her complaint to IAB. These aspects lent credibility to his allegations. The fact that defendant Santos is a police officer does not undermine the existence of probable cause particularly where, as here, there was no personal or professional relationship between the complainant and the investigating detective. *See, e.g.*, *Rae v. County of Suffolk*, 693 F. Supp. 2d 217, 226 (E.D.N.Y. 2010) (finding probable cause despite relationships between the complainant and the alleged perpetrator and between the complainant and the arresting officer). Furthermore, Detective McDonald's conversation with Lieutenant Ferraro corroborated some of the information in defendant Santos's complaint—that he and plaintiff had a previous relationship, that she filed complaints against him with IAB, and that IAB had told her to stay away from defendant Santos. A review of one of the surveillance videotapes also showed plaintiff at defendant Santos's apartment building, consistent with an allegation of harassment or stalking.

Moreover, when Detective McDonald discussed the complaint with plaintiff, she admitted to being at defendant Santos's apartment building on several of the days alleged, and she did not dispute the information about her interactions with IAB. Plaintiff merely denied that her visits were uninvited, and disputed the threatening behavior alleged in connection with her visits. Even taking as true all of plaintiff's representations about her discussion with Detective McDonald, he was not required to believe plaintiff's version of the events. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

Plaintiff advances a litany of arguments that she believes undermine the probable cause analysis and the reasonableness of relying on defendant Santos's representations. Many are wholly speculative and without record support, and all are unavailing.

Plaintiff relies most heavily on the fact that defendant Santos had motive to lie based on plaintiff's sexual assault allegation against him. However, the fact that plaintiff previously brought a complaint against the individual whose representations form the basis for an arrest does not preclude the arresting officer from relying on the allegations of that individual. *See Panetta*, 460 F.3d at 397 n.3. This is particularly true where, as here, Detective McDonald did, in fact, make further inquiries upon hearing of plaintiff's previous complaints against defendant Santos, and learned nothing to undermine Santos's veracity or the substance of his complaint. Moreover, the facts surrounding plaintiff's relationship with defendant Santos are irrelevant to the false arrest claim to the extent they were unknown to Detective McDonald at the time of plaintiff's arrest. *Ricciuti*, 124 F.3d at 128.

Plaintiff maintains that Detective McDonald could have done more to investigate defendant Santos's allegations and her own claims. However, an officer is "not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest." *Panetta*, 460 F.3d at 396 (citation omitted); *Jaegly*, 439 F.3d at 153. "[F]ailure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). However, "probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) (citation and internal quotations marks omitted). Here, while there may have been some

potential motive for a false allegation by defendant Santos, given his history with plaintiff, there was no reason for Detective McDonald to investigate further. He was not presented with anything that triggered an additional duty to investigate, and was already aware of information supporting probable cause through Santos's very detailed complaint, his call with IAB, and his discussion with plaintiff prior to her arrest. Taking all of the circumstances into account, and viewing them in the light most favorable to plaintiff, Detective McDonald had probable cause to arrest plaintiff.

Plaintiff next argues that it was "unlikely to the point of impossibility" that Lieutenant Ferraro did not communicate to Detective McDonald all the details included in Santos's IAB file, including information on matters unrelated to her own complaints. Plaintiff offers no evidence to support this belief, and instead wholly speculates as to the content of their conversations. Indeed, the record evidence suggests that Lieutenant Ferraro communicated to Detective McDonald the general parameters of plaintiff's complaints and nothing else. (Ferraro Dep. I, at 12–16.) Moreover, in making this argument plaintiff makes two unwarranted assumptions: (1) that if the entire IAB file was disclosed, Detective McDonald would have concluded that the allegation of sexual assault is true; and (2) that if he concluded the sexual assault allegation is true, he could not credit defendant Santos's complaint. Even assuming that the IAB complaints against defendant Santos are true, they are not inconsistent with an otherwise plausible claim that plaintiff engaged in harassing and stalking behavior.

Plaintiff also claims, correctly, that Detective McDonald's DD-5 erroneously characterizes the surveillance videotapes as showing plaintiff attaching letters and photographs to defendant Santos's door, while the actual videotape only shows plaintiff standing in the building. However, this videotape hardly serves to "exonerate" plaintiff, as she claims. (Pl.'s

Mem. Opp. Mot. Summ. J. at 5.)  The videotape is evidence supportive of Santos's allegations, and certainly does not undermine them.

Plaintiff points to an alleged statement by Detective McDonald that the videotape is "unsubstantiated evidence" and "his boss" ordered the arrest.  Assuming this statement was made, and that it reflected the truth, defendant was entitled to rely on the assessment made by his superior officer.  *Martinez*, 202 F.3d at 634.  Furthermore, an officer's subjective belief that probable cause may not yet exist is irrelevant to the *objective* probable cause inquiry.  *See Zahrey v. City of New York*, Civil Action No. 98-4546 (DCP)(JCF), 2009 U.S. Dist. LEXIS 8177, at *79 (S.D.N.Y. Jan. 7, 2009) (citing *Singer*, 63 F.3d at 120); *see also Brewton*, 550 F. Supp. 2d at 364 n.8 ("[A] police officer's subjective motivations are irrelevant to the probable cause inquiry.") (citing *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)).

Thus, none of the arguments advanced by plaintiff undermine the uncontroverted evidence supporting probable cause.  Detective McDonald interviewed what he reasonably believed to be a truthful complainant, reviewed the physical evidence, conducted a reasonable investigation into the prior history between the parties, and concluded his investigation with his interview of plaintiff, who did not deny going to Santos's house during the period in question, but denied doing anything wrong.  His investigation provided him with probable cause, and as such, he made a proper arrest.  Thus, plaintiff's false arrest claim against Detective McDonald fails as a matter of law.   So, too, does the false arrest claim against Sergeant Gilbert.

### b.  Sergeant Gilbert

The only evidence of Sergeant Gilbert's involvement in plaintiff's arrest and the investigation leading thereto is his signature on the arrest documentation as the "reviewing" or "approving" officer.  (Dec. 31, 2005 DD-5, Ex. B to Hudson Decl.; Omniform Arrest Report, Ex.

K to Hudson Decl.)  Plaintiff argues that there are disputed issues of fact as to whether Sergeant Gilbert discussed the case with Detective McDonald, and whether Sergeant Gilbert ordered Detective McDonald to arrest plaintiff.  Plaintiff can point to no evidence to support the assertion that the two men spoke; instead, she offers only her own speculation.  To support the notion that Detective McDonald was told to make the arrest, plaintiff points solely to her own self-serving testimony regarding Detective McDonald's alleged statement that "his boss" ordered the arrest. Even assuming this statement were true, there is nothing in the record to suggest that Sergeant Gilbert was the "boss" to whom Detective McDonald was allegedly referring.  Given Sergeant Gilbert's lack of personal involvement in plaintiff's arrest or the investigation leading thereto, plaintiff's false arrest claim against Sergeant Gilbert must fail.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite . . . . Nor can [defendant] be held personally responsible simply because he was in a high position of authority.")

Even if Sergeant Gilbert was involved in, or did, in fact, order plaintiff's arrest, probable cause "is a complete defense to an action for false arrest." *Brewton*, 550 F. Supp. 2d at 363 (quoting *Weyant*, 101 F.3d at 852).  For the reasons stated above, there was probable cause for plaintiff's arrest based on the information available to Detective McDonald when the arrest was executed.  Even if assessed only on the information made available to Sergeant Gilbert in the DD-5, the probable cause test was met.

### 2. Qualified Immunity

Alternatively, Detective McDonald and Sergeant Gilbert are entitled to qualified immunity.  Qualified immunity applies "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 432 (2d Cir. 2009). A police officer is shielded from liability "if he can demonstrate that there was arguable probable cause for the arrest." *Brewton*, 550 F. Supp. 2d at 363 (internal quotations and citation omitted); *Amore*, 624 F.3d at 536. "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Amore*, 624 F.3d at 536; *see also Okin*, 577 F.3d at 433 ("A police officer who has an objectively reasonable belief that his actions are lawful is entitled to qualified immunity. . . . The objective reasonableness test is met . . . [if] officers of reasonable competence could disagree.") (citations and internal quotation marks omitted). This "objective reasonableness" inquiry is a question of law for the court to decide. *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (citations omitted).

As discussed above, officers are entitled to rely on statements by the alleged victim of a crime absent circumstances casting doubt on the victim's veracity. *See Martinez*, 202 F.3d at 634; *Singer*, 63 F.3d at 119. That the purported victim is a police officer does not preclude such reliance. *See, e.g.*, *Martinez*, 202 F.3d at 634. Here, Detective McDonald relied on defendant Santos's detailed complaint. He was also made aware of some corroborating information from IAB, and he was presented with no obvious exculpatory evidence. Plaintiff argues that Detective McDonald failed to pursue available investigatory avenues, such as interviewing potential witnesses. However, once he had a reasonable basis for believing there was probable cause, Detective McDonald was not required to explore plaintiff's claims of innocence further. *Ricciuti*, 124 F.3d at 128. Considering the totality of the circumstances, it was objectively reasonable for Detective McDonald to believe that probable cause existed, and, at the very least, officers of reasonable competence could disagree as to whether the test was met in this case.

Detective McDonald is entitled to qualified immunity with respect to plaintiff's claim of false arrest.

As noted previously, assuming instead that plaintiff's arrest was ordered by Sergeant Gilbert, Detective McDonald is still entitled to rely on the assessment made by his superior officer. *Danielak v. City of New York*, 02-CV-2349 (KAM), 2005 U.S. Dist. LEXIS 40901, at *9 (E.D.N.Y. Sept. 26, 2005), *aff'd*, 209 F. App'x 55 (2d Cir. 2006). Sergeant Gilbert's decision to arrest plaintiff would also entitle him to qualified immunity, as it was objectively reasonable for an officer to believe probable cause was met based on the information known at the time of plaintiff's arrest.

In light of the foregoing, the Court grants summary judgment in favor of the City Defendants on plaintiff's false arrest claim.

### B. Malicious Prosecution Claims Against Detective McDonald and Sergeant Gilbert

The City Defendants also move for summary judgment on plaintiff's claims of malicious prosecution both under § 1983 and New York state law. A § 1983 claim for malicious prosecution requires the plaintiff to "demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). Therefore, for both her federal and state claims, plaintiff must "show: (1) that the defendant commenced or continued a criminal proceeding against [her]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.*; *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

Taking the uncontroverted evidence in the light most favorable to plaintiff, her claims of malicious prosecution against Detective McDonald and Sergeant Gilbert do not survive summary judgment.

First, there was probable cause to institute and maintain plaintiff's prosecution. Lack of probable cause in the context of a claim for malicious prosecution "must be evaluated in light of the facts known or believed at the time the prosecution is initiated rather than at the time of the arrest." *Id.* at *33 (internal citations and quotation marks omitted). Where a court finds that there was probable cause for arrest, and "[i]n the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." *Parisi v. Suffolk County*, No. 04-CV-2187, 2009 U.S. Dist. LEXIS 112388, at *34 (E.D.N.Y. Nov. 30, 2009); *see also Lowth*, 82 F.3d at 571 ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact."). As discussed above, there was sufficient probable cause to support plaintiff's arrest, and the record is devoid of any intervening facts or evidence discovered after the time of her arrest that would suggest that the charges against her were groundless. Furthermore, defendants were under no obligation to attempt to exonerate plaintiff or to uncover exculpatory evidence. *See Krause*, 887 F.2d at 371–72.

Second, plaintiff has offered no evidence to show that defendants were sufficiently involved in her prosecution to allow a claim for malicious prosecution. Plaintiff concedes that neither Detective McDonald nor Sergeant Gilbert signed the charging instrument. No other involvement is alleged. Plaintiff was arraigned on the day following her arrest, and she can point to no facts, let alone sufficient evidence, as to what, if any, involvement Detective McDonald

and Sergeant Gilbert had in her prosecution after her arrest. Moreover, Santos signed a supporting deposition, thereby swearing under oath to the truth of his statements that form the basis for the complaint and its prosecution.[12]

Finally, plaintiff cannot point to any evidence of malice. While malice may be presumed from a lack of probable cause, *Lowth*, 82 F.3d at 573, that is not the case here. Plaintiff alludes to a general effort by his fellow officers to protect defendant Santos because he is a police officer. Plaintiff has offered no evidence to support her assertion, and her theory is wholly speculative based solely on the coincidental fact that Santos is a police officer. Indeed, the uncontroverted record evidence establishes that there was no professional or personal relationship between defendant Santos and either Detective McDonald or Sergeant Gilbert, let alone any words or conduct from which a reasonable inference of malice towards plaintiff could be drawn.[13] (McDonald Dep., at 12; Gilbert Dep., at 31, 48.)

Even if plaintiff could make a claim of malicious prosecution, defendants would be entitled to qualified immunity. As discussed, plaintiff has offered no intervening facts after her arrest that would negate probable cause. Because the probable cause at the time of arrest did not dissipate, probable cause to prosecute existed, and defendants Detective McDonald and Sergeant Gilbert are thus entitled to qualified immunity. *Danielak*, 2005 U.S. Dist. LEXIS 40901, at *30–35.

In light of the foregoing, the Court grants summary judgment in favor of the City Defendants on plaintiff's malicious prosecution claims.

---

[12] Indeed, the subsequent amended criminal complaints appear to have been signed by Assistant District Attorneys, and defendant Santos signed corroborating affidavits for each.

[13] Plaintiff's testimony alleged a social relationship between Lieutenant Ferraro and defendant Santos. (Rodriguez Dep. II, at 192.) Both defendant Santos and Lieutenant Ferraro testified that they had never met one another prior to the investigation. (Santos Dep., at 84–85; Ferraro Dep. II, at 11.)

### C.    Claims Against Defendant Angel Santos

Defendant Santos made a separate motion for summary judgment as to plaintiff's claims against him.  Plaintiff did not file any opposition directed to defendant Santos's motion.  As such, arguments in opposition are deemed abandoned.[14]  *See Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).  In any event, they are without merit.

#### 1.  Federal Claims Under § 1983

Liability under § 1983 requires that the defendant be acting under color of state law.  *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (quotation marks and citations omitted).  The "acts of officers engaged in personal pursuits are not included."  *United States v. Temple*, 447 F.3d 130, 138 (2d Cir. 2006) (internal quotation marks omitted).  Here, plaintiff concedes that defendant Santos was not acting under color of state law in making his complaint against plaintiff.  (Pl.'s Mem. Opp. Summ. J. 1 n.1.) Accordingly, a § 1983 claim against him cannot lie, and he must be granted summary judgment as to plaintiff's § 1983 claims.

---

[14] On January 12, 2011, by way of letter, plaintiff's counsel wrote to the Court, ostensibly on behalf of defendant Santos as well, seeking to dismiss pursuant to Rule 41(a)(2) all claims against defendant Santos and request that the Court decline supplemental jurisdiction on the remaining state claims against Santos.  (Joint Mot. Dismiss (Doc. 65).)  On January 13, 2011, this Court denied that joint motion, as the letter did not include a proper notice of voluntary dismissal, signed by the necessary parties.

### 2. State Law Claim for Malicious Prosecution

Plaintiff also asserts a state law claim for malicious prosecution against Santos. Plaintiff concedes that defendant Santos was not acting within the scope of his employment, and was instead acting in a personal capacity at all times relevant to this action. As such, defendant Santos is subject to the one year statute of limitations under N.Y. C.P.L.R. 215(3) for malicious prosecution, and not the one year and ninety-days statute of limitations under N.Y. Gen. L. § 50-i(1) for claims of malicious prosecution against municipalities. *See Niles v. City of Oneida*, No. 6:06-CV-1492 (GTS/GHL), 2009 U.S. Dist. LEXIS 24933, at *9–18 & n.3 (N.D.N.Y. Mar. 25, 2009) (citing cases). A cause of action for malicious prosecution under New York law accrues on the date that the proceeding is terminated in favor of the plaintiff. *Mejia v. City of New York*, 228 F. Supp. 2d 234 (E.D.N.Y. 2002). Therefore, plaintiff's action was time-barred as of one year from the date of the disposition of the action against her, which was October 4, 2007. Because plaintiff instituted this action on October 14, 2008, one year and ten days later, her action is not timely. Plaintiff has offered no argument in opposition. Accordingly, summary judgment is granted as to plaintiff's state law malicious prosecution claims against defendant Santos.

### D. Other Claims Against the Individual Defendants

### 1. Failure to Intervene

A police officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Failure to intervene to prevent unlawful arrest can be grounds for liability under § 1983. *Id.* However, police officers are immune from suit for failure to intervene if the qualified immunity test is met. *Ricciuti*, 124 F.3d at 129.

Plaintiff's complaint suggests a potential claim of failure to intervene under § 1983, which claim the City Defendants address in their brief.  (Compl. (Doc. 1), at ¶ 17; Defs.' Mem. Law in Support of Summ. J. ¶¶ 14–15.)  However, plaintiff failed to address City Defendants' arguments in this regard, and any such claim has been abandoned.  *See Ostroski*, 443 F. Supp. 2d at 340; *Taylor*, 269 F. Supp. 2d at 75.  Moreover, even taking as true the facts as plaintiff alleges them, they fail to support such a claim.   As discussed above, plaintiff's arrest did not violate her constitutional rights as it was predicated on probable cause.  And, as noted, both Detective McDonald and Sergeant Gilbert each were entitled to qualified immunity.

## 2.  Conspiracy

Plaintiff also alludes to, without explicitly pleading, a conspiracy claim.  A § 1983 conspiracy claim requires "(1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Martinez v. Golding*, 499 F. Supp. 2d 561, 570 (S.D.N.Y. 2007).  Plaintiff's claim fails.

Plaintiff makes vague and broad references to a general scheme to protect defendant Santos as a police officer, as well as an implicit agreement to act with defendant Santos to falsely arrest and prosecute plaintiff.  However, plaintiff does not point to any facts to support such a claim, let alone raised a genuine and material disputed issue of fact.  To say that a conspiracy must have existed because (1) to plaintiff's mind, the evidence to support probable cause was thin or nonexistent, and (2) the defendants had opportunity to speak prior to her arrest, is sheer speculation and wholly conclusory.  In fact, plaintiff  concedes there was no relationship between defendant Santos and Detective McDonald or Sergeant Gilbert prior to defendant Santos's complaint.  (Rodriguez Dep. II, at 192.)  As noted above, these officers had not worked

personally with Santos, nor had they socialized with him. Even taking plaintiff's version of the facts as true, a relationship is insufficient to support a conspiracy theory involving Lieutenant Ferraro and defendant Santos, let alone the alleged arresting officer(s). Once again, plaintiff can point only to defendant Santos's potential motive to falsely accuse her of a crime. This is insufficient to support a conspiracy theory. *See Parisi*, 2009 U.S. Dist. LEXIS 112388, at *42.

Moreover, as discussed above, there was probable cause to arrest plaintiff, and therefore there was no constitutional injury. Plaintiff does not allege that the facts offered to support probable cause were fabricated by Detective McDonald or Sergeant Gilbert in furtherance of a conspiracy. In fact, she does not dispute most of the factual allegations made by defendant Santos in his complaint, nor does she dispute the information allegedly communicated to Detective McDonald by Lieutenant Ferraro. Any conspiracy claim is therefore dismissed.

## CONCLUSION

For the reasons set forth in this Memorandum and Order, the motions for summary judgment of City Defendants (Doc. No. 70) and defendant Angel Santos (Doc. No. 71) are GRANTED, and the complaint is dismissed in its entirety as against all defendants. As this Order disposes of all of plaintiff's outstanding claims, the Clerk of Court is directed to enter judgment in accordance with this Order, and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
        March 28, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

24